## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**SHAVONNE DANIELS,**
**individually and on behalf of all**
**others similarly situated,**

*Plaintiff*,

v.

**THE GIANT COMPANY, LLC,**

*Defendant*.

Case No.: _____

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

Plaintiff Shavonne Daniels ("Plaintiff") brings this Class Action Complaint against Defendant, The GIANT Company, LLC, ("Defendant"), individually and on behalf of all others similarly situated, and alleges, upon personal knowledge as to Plaintiff's own actions and to counsels' investigation, and upon information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1.      Plaintiff brings this class action lawsuit on behalf of themselves, and all others similarly situated who purchased GIANT brand Orange Soda (the "Product") which was unfit for its intended use because it contains Brominated Vegetable Oil. The Product is formulated, designed, manufactured, advertised, sold, and distributed

by Defendant or its agents to consumers, including Plaintiff, across the United States.

2.      Brominated Vegetable Oil ("BVO") is an oil additive used in food and drinks to keep citrus flavoring from separating and floating in the product.

3.      In the late 1950s and 1960s, the U.S. Food and Drug Administration ("FDA") included BVO on its list of ingredients generally regarded as safe ("GRAS"). However, during the late 1960s, the FDA restricted the use of BVO and only allowed its use as a flavoring-oil stabilizer in fruit-flavored drinks. Then, in 1970, the FDA removed BVO from the "GRAS" list after considering the results of multiple toxicity studies conducted by the Canadian Food and Drug Directorate.[1]

4.      In May 2022, the FDA published a study that evaluated the potential health effects related to BVO consumption in rodents. The information gleaned from the study indicated that BVO consumption "is associated with increased tissue levels of bromine and that at high levels of exposure the thyroid is a target organ of potential negative health effects."[2]

5.      On July 3, 2024, the FDA revoked the food additive regulation that authorized the use of BVO in food items.[3] The FDA's decision to ban the use of

---

[1] https://www.yahoo.com/news/sodas-contain-bvo-fda-bans-014559358.html (last accessed August 13, 2024).
[2] https://www.fda.gov/food/food-additives-petitions/brominated-vegetable-oil-bvo (last accessed August 13, 2024).
[3] *Id*.

BVO in food came "after the results of studies conducted in collaboration with the National Institutes of Health (NIH) found the potential for adverse health effects in humans."[4]

6.     Both animal and human data suggested that the use of BVO in food was unsafe and that high levels of exposure to BVO can damage the central nervous system. More specifically, BVO has toxic effects on the thyroid gland[5] and can cause hypothyroidism, leading to weight gain, and depression.[6]  Bromine, one of the ingredients in BVO, has been "been linked to neurologic symptoms in people who drink large quantities of citrus soda."[7]

7.     Neurological symptoms can vary greatly and often resemble other medical conditions or problems. Generally, symptoms of nervous system disorders include: persistent headaches; numbness or tingling; weakness or loss of muscle strength; loss of sight or double vision; memory loss; impaired mental ability; lack of coordination; muscle rigidity or paralysis; tremors or seizures; and slurred speech.

---

[4] *Id*.

[5] See, *Toxicological evaluation of brominated vegetable oil in Sprague Dawley rats*, K.A. Woodling et al., https://www.sciencedirect.com/science/article/abs/pii/S0278691522003350 (last accessed August 13, 2024).

[6] *FDA bans use of BVO in all food and beverages*, https://www.fooddive.com/news/fda-bans-use-bvo-all-food-beverages/720720/#:~:text=Before%20the%20FDA%20took%20a,and%20Illinois%20have%20followed%20suit. (last accessed August 13, 2024).

[7] *What Exactly Is Brominated Vegetable Oil*, Serena Ball, M.S., R.D., https://www.foodnetwork.com/healthy/articles/brominated-vegetable-oil-dangers-side-effects (last accessed August 13, 2024).

8.     Because of these negative effects, BVO is not allowed as a food additive in Japan or the European Union. In 2013, PepsiCo announced that it would remove BVO from Gatorade products. In 2014, both PepsiCo and Coca-Cola announced the removal of BVO from all products.[8] California, Missouri, Washington, New York, and Illinois have also banned the use of BVO due to its potential negative health effects.[9]

9.     As mentioned earlier, BVO is a vegetable oil that is modified with bromine and used as a stabilizer for citrus fruit flavored beverages.  There are 605 food and beverage products listed on the U.S. Department of Agriculture's branded foods database that contain brominated vegetable oil.[10]

10.    Plaintiff brings this suit on behalf of herself and all other similarly situated consumers who purchased Defendant's citrus flavored soda product containing BVO. Plaintiff has been caused to purchase a defective product that is worthless, or worth less than the price paid.  Due to the negative health effects associated with prolonged consumption of BVO containing products, Plaintiff must

---

[8] *What Exactly Is Brominated Vegetable Oil*, Serena Ball, M.S., R.D., https://www.foodnetwork.com/healthy/articles/brominated-vegetable-oil-dangers-side-effects (last accessed August 13, 2024).
[9] *FDA bans use of BVO in all food and beverages,* https://www.fooddive.com/news/fda-bans-use-bvo-all-food-beverages/720720/#:~:text=Before%20the%20FDA%20took%20a,and%20Illinois%20have%20followed%20suit. (last accessed August 13, 2024).
[10] *See*, https://fdc.nal.usda.gov/fdc-app.html#/food-search?query=brominated%20vegetable%20oil&type=Branded (last accessed August 13, 2024).

undergo periodic medical testing to detect and protect themselves from future injury or illness.

11.    Plaintiff brings suit to recover the economic costs of the extra medical evaluations that Plaintiff expects to incur as a result of their exposure to BVO. This action seeks refunds of the amount Plaintiff and other members of the Classes paid, medical monitoring costs, and other damages as pled herein.

## **PARTIES**

12.    Plaintiff Shavonne Daniels is a citizen of the State of South Carolina. At all relevant times, Plaintiff has been a resident of Kingstree, South Carolina, located in Williamsburg County, South Carolina.

13.    Defendant, The GIANT Company, LLC, formerly known as Giant Food Stores, LLC, is a limited liability company organized under the laws of the State of Delaware, with a principal place of business located at 1149 Harrisburg Pike, Carlisle, Pennsylvania 17013.[11]

---

[11] When subject matter jurisdiction is established under the Class Action Fairness Act, "an LLC's citizenship is based on its principal place of business and laws of incorporation." *Hernandez v. Pure Health Rsch. LLC*, No. 23-cv-00971, 2023 WL 7029213, at *3 (S.D. Cal. Oct. 25, 2023) (applying § 1332(d)(10) of CAFA) (citing *Jack v. Ring LLC*, 553 F. Supp. 3d 711, 715 (N.D. Cal. 2021)); *see also Abrego v. Dow Chem. Co*., 443 F.3d 676, 684 (9th Cir. 2006) (noting that § 1332(d)(10) of CAFA provides a different rule for unincorporated associations). Here, Defendant is an LLC formed under the laws of Delaware and with its principal place of business in Pennsylvania. Thus, for the purposes of establishing minimal diversity, Defendant is a citizen of Delaware and Pennsylvania.

## **JURISDICTION & VENUE**

14.     This Court has jurisdiction over this action pursuant to the Class Action

Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because at least one class member is

of diverse citizenship from one Defendant, there are more than 100 Class members,

and the aggregate amount in controversy exceeds $5 million, exclusive of interest

and costs.

15.     This Court has personal jurisdiction over Defendant because its

principal place of business is located in this District, and Defendant operates a

regional supermarket that is located within this District.

16.     Venue is proper under 28 U.S.C §1391(b) because Defendant maintains

its principal place of business in this District, operates a regional supermarket in this

District, and a substantial part of the events and omissions giving rise to Plaintiff's

claims occurred in and emanated from this District.

## **FACTUAL ALLEGATIONS**

17.     Plaintiff re-alleges and incorporates by reference all the allegations

contained in the foregoing paragraphs as if fully set forth herein.

18.     Brominated Vegetable Oil is an oil additive used in food and drinks to

keep citrus flavoring from separating and floating in the product.

19.    On July 3, 2024, the FDA revoked the food additive regulation that authorized the use of BVO in food items.[12] The FDA's decision to ban the use of BVO in food came after studies found BVO can cause adverse health effects in humans.[13]

20.    High levels of bromine, one of the ingredients in BVO, can damage the thyroid gland[14] and can cause hypothyroidism, leading to weight gain, and depression.[15]  People who drink large quantities of citrus soda containing BVO can develop serious neurological symptoms like persistent headaches, numbness or tingling, weakness or loss of muscle strength, loss of sight or double vision, memory loss, impaired mental ability, lack of coordination, muscle rigidity or paralysis, tremors or seizures, and slurred speech.

21.    Defendant owns, manufactures, and sells branded foods listed by the U.S. Department of Agriculture as a product that contains brominated vegetable oil.

---

[12] https://www.fda.gov/food/food-additives-petitions/brominated-vegetable-oil-bvo (last accessed August 13, 2024).

[13] *Id.*

[14] See, *Toxicological evaluation of brominated vegetable oil in Sprague Dawley rats*, K.A. Woodling et al., https://www.sciencedirect.com/science/article/abs/pii/S0278691522003350 (last accessed August 13, 2024).

[15] *FDA bans use of BVO in all food and beverages,* https://www.fooddive.com/news/fda-bans-use-bvo-all-food-beverages/720720/#:~:text=Before%20the%20FDA%20took%20a,and%20Illinois%20have%20followed%20suit. (last accessed August 13, 2024).



*Nutritional facts for Our Brand Orange Soda Caffeine Free – 12 pk*

22.     Plaintiff bargained for a product that was safe to consume and were thus deprived of the basis of their bargain when Defendant sold them a Product—intended to be frequently and repeatedly consumed—containing BVO which becomes toxic with repeated consumption, thereby exposing Plaintiff and Class Members (defined below) to potentially severe health consequences.

23.     Upon information and belief, most major soda brands have already removed BVO from their products.  Moreover, BVO is not allowed as a food additive in Japan, the European Union, California, Missouri, Washington, New York, or Illinois because of its negative health effects.

24.     No reasonable consumer would expect the Product, a citrus flavored beverage, to cause neurological symptoms, hypothyroidism, and depression.  Due to the negative health effects associated with prolonged consumption of BVO containing products, Plaintiff must undergo periodic medical testing to detect and protect themselves from future injury or illness. Accordingly, Plaintiff and Class Members were injured as a result of purchasing the Product, including, among other things, they purchased and paid for a product that did not conform to what was promised as promoted, marketed, advertised, packaged, and labeled by Defendant; and they were deprived of the benefit of their bargain; and they spent money on a product that did not have any value or had less value than warranted or that they would not have purchased and consumed had they known the truth about the product.

25.     Additionally, because the facts concern a safety-related deficiency in the Product, Defendant was under a continuous duty to disclose to Plaintiff and the members of the Classes the true nature of the Product and to disclose the Product contained a substance known to cause adverse health effects.   Furthermore, Defendant, as the owner, manufacturer, marketer, and seller, had a duty to disclose because of Defendant's exclusive and/or superior knowledge concerning the composition of the Product.

26.     Although Defendant disclosed the Product contained "brominated vegetable oil" or otherwise indicated it was "brominated," Defendant omitted and

concealed the fact that prolonged consumption of brominated vegetable oil was known to have significant health consequences. Thus, Defendant's conduct deceived Plaintiff into believing prolonged consumption of the Product was safe.

27. Considering most major soda brands have already removed BVO from their products due to its toxicity, Defendant knew, or reasonably should have known, that this information is material to reasonable consumers, including Plaintiff and Class Members, when they make their purchasing decisions, yet Defendant did not disclose this material information.

28. Defendant made material omissions during the putative class period, including prior to and at the time of Plaintiff's purchases, despite Defendant knowing, or reasonably should have known, the risk presented by using BVO in the Product. These material omissions of fact occurred throughout the United States and were missing from the labels, packaging, and marketing materials for the Product. Plaintiff viewed the labels, packaging, and advertising associated with the Product and would not have known that consistent use of the Product would expose them to toxic chemicals.

29. Plaintiff and Class Members purchased, and paid a premium, or otherwise paid more for the Product than they otherwise would have—had they known that the Product contained toxic, harmful chemicals. Defendant was best

positioned to know of the prolonged effects of BVO in its products and failed to disclose the consequences of repeated consumption of the Product to consumers.

## CLASS ALLEGATIONS

30.     Plaintiff incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

31.     Pursuant to the provisions of Rules 23(a), 23(b)(2), 23(b)(3) and/ or 23 (c)(4) of the Federal Rules of Civil Procedure, Plaintiff brings this class action on behalf of herself, and a multistate Class defined as:

> **National Class:** All persons in the United States who purchased the Product during the applicable statute of limitations.

32.     In the alternative, pursuant to the provisions of Rules 23(a), 23(b)(2), 23(b)(3) and/or 23(c)(4) of the Federal Rules of Civil Procedure, Plaintiff brings this class action on behalf of herself, and on behalf of the subclass(es) defined as:

> **South Carolina Subclass:** All persons in the State of South Carolina that purchased the Product within the applicable limitations period.

> **Pennsylvania Subclass:** All persons in the Commonwealth of Pennsylvania that purchased the Product within the applicable limitations period.

33.     The National Class, the South Carolina Subclass, and the Pennsylvania Subclass are collectively referred to as the "Class". The Class excludes Defendant, any parent companies, subsidiaries, and/or affiliates, officers, directors, legal

11

representatives, employees, co-conspirators, all governmental entities, and any judge, justice, or judicial officer presiding over this matter.

34.    Certification of Plaintiff's claims for class-wide treatment is appropriate because all elements of Fed. R. Civ. P 23(a), (b)(2)-(3), as well as 23(c)(4), are satisfied. Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in an individual action alleging the same claims.

35.    **Numerosity:** All requirements of Fed. R. Civ. P. 23(a)(1) are satisfied. The members of the Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable.  While Plaintiff is informed and believes that there are thousands of members of the Class, the precise number of Class members is unknown to Plaintiff. Plaintiff believes that the identity of the Class members is known or knowable by Defendant or can be discerned through reasonable means. Adequate notice can be given to Class Members directly using information maintained in Defendant's records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

36.    **Commonality and Predominance:** All requirements of Fed. R. Civ. P. 23(a)(2) and 23(b)(3) are satisfied. The action involves common questions of law

and fact, which predominate over any questions affecting individual Class members,

including, but not limited to:

a.     Whether a reasonable consumer would understand Defendant's labels, packaging, and other marketing to mean Brominated Vegetable Oil in the Product was safe to repeatedly consume;

b.     Whether Defendant failed to disclose material facts concerning the Product;

c.     Whether the facts Defendant omitted are material to a reasonable consumer;

d.     Whether the omissions by Defendant were likely to deceive a reasonable consumer;

e.     Whether Defendant knew or should have known that the Product and/or Brominated Vegetable Oil posed a health risk thereby rendering it unsafe for its intended use;

f.     Whether Defendant's conduct was unlawful;

g.     Whether Defendant was unjustly enriched by its actions;

h.     Whether Plaintiff and members of the Class are entitled to declaratory and injunctive relief; and

i.     Whether Plaintiff and members of the Class are entitled to damages and, if so, the measure of such damages.

37.    **Typicality:** All requirements of Fed. R. Civ. P. 23(a)(3) are satisfied. Plaintiff is a member of the Class, having purchased for personal consumption the Products that were manufactured by Defendant. Plaintiff's claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured through Defendant's conduct.

38.    **Adequacy of Representation:** All requirements of Fed. R. Civ. P. 23(a)(4) are satisfied. Plaintiff is an adequate Class representative because he is a member of the Class and his interests do not conflict with the interests of the other members of the Class that he seeks to represent. Plaintiff is committed to pursuing this matter for the Class with the Class' collective best interests in mind. Plaintiff has retained counsel competent and experienced in complex class action litigation of this type, and Plaintiff intends to prosecute this action vigorously. Plaintiff and her counsel will fairly and adequately protect the Class's interest.

39.    **Predominance and Superiority:** All requirements of Fed. R. Civ. P. 23(b)(3) are satisfied. As described above, common issues of law or fact predominate over individual issues. Resolution of those common issues in Plaintiff's individual case will also resolve them for the Class's claims. In addition, a class action is superior to any other available means for the fair and efficient adjudication of this controversy and no unusual difficulties are likely to be encountered in the management of this class action. The damages or the other financial detriment suffered by Plaintiff and the other Class members are relatively small compared to the burden and expense they would be required to individually litigate their claims against Defendant, so it would be impracticable for members of the Class to individually seek redress for Defendant's wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized

litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

40. **Cohesiveness:** All requirements of Fed. R. Civ. P. 23(b)(2) are satisfied. Defendant has acted, or refused to act, on grounds generally applicable to the Class, making the final declaratory or injunctive relief appropriate.

41. Plaintiff knows of no special difficulty to be encountered in the maintenance of this action that would preclude litigating it as a class action.

## CAUSES OF ACTION
### (*On behalf of Plaintiff and the Class*)

### COUNT 1: UNJUST ENRICHMENT

42. Plaintiff incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

43. Plaintiff conferred a monetary benefit on Defendant when she purchased the Products. Defendant failed to disclose to Plaintiff that its Products were unsafe and could cause hypothyroidism and other neurological symptoms.

44. Defendant knew that Plaintiff conferred a benefit and retained that benefit. Defendant was unjustly enriched in retaining the revenues derived from Plaintiff. Retention of those funds under these circumstances is unjust and

inequitable because Defendant failed to disclose that the Product contained a toxic substance.

45.    Defendant's omissions caused injuries to Plaintiff and Class Members because they would not have purchased the Product if these facts were known.

46.    Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and the Class Members, proceeds that Defendant unjustly received. In the alternative, Defendant should be compelled to refund the amounts that Plaintiff and the Class Members overpaid.

## COUNT 2: NEGLIGENCE

47.    Plaintiff incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

48.    Because the facts concern a safety-related deficiency in the Product, Defendant was under a continuous duty to disclose to Plaintiff and Class Members the Product contained a substance known to cause adverse health effects. Furthermore, Defendant, as the owner, manufacturer, marketer, and seller, had a duty to disclose because of Defendant's exclusive and/or superior knowledge concerning the composition of the Product.

49.    Although Defendant disclosed the Product contained "brominated vegetable oil" or otherwise indicated it was "brominated," Defendant omitted and

concealed the fact that prolonged consumption of brominated vegetable oil was known to cause hypothyroidism and other neurological disorders.

50.    Because of these negative effects, both PepsiCo and Coca-Cola removed BVO from all products in 2014. As a manufacturer and distributor of carbonated beverages, Defendant knew, or should have known, that prolonged consumption of brominated vegetable oil posed serious health concerns.

51.    Despite Defendant's knowledge that repeated consumption of bromine has toxic effects, Defendant breached its duty of care owed to Plaintiff and Class Members by placing the Product into the stream of commerce.

52.    Plaintiff and Class Members were significantly exposed to soda products containing BVO, a proven hazardous substance, as a direct and proximate result of Defendant's negligence. As a consequence of Defendant's negligence, Plaintiff and Class Members suffered, and continue to suffer, financial injury.

53.    As a further proximate result of Defendant's negligence, Plaintiff and Class Members suffer a significantly increased risk of contracting a serious latent disease, including, but not limited to, hypothyroidism or other neurological disorders; that increased risk makes periodic diagnostic medical examinations reasonably necessary; and monitoring and testing procedures exist which make early detection and treatment of the disease possible and beneficial.

54.     Plaintiff and the Class Members have suffered damages in an amount to be determined at trial that, among other things, refunds the amount Plaintiff and the Class Members paid for the Product, awards medical monitoring expenses, costs, interest and attorneys' fees.

## COUNT 3: NEGLIGENT FAILURE TO WARN

55.     Plaintiff incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

56.     Defendant manufactured, designed, marketed, and sold the Product in a defective and unreasonably dangerous condition such that the foreseeable risks exceeded the benefits associated with the design and/or formulation of the Product.

57.     Despite Defendant's knowledge that repeated consumption of bromine has toxic effects, Defendant placed the Product into the stream of commerce.

58.     Defendant's Product was defective due to inadequate warning and/or inadequate testing and study, and inadequate reporting regarding the results.

59.     Defendant's Product was defective due to inadequate post-marketing warning or instruction because, after Defendant knew or should have known of the risk of injury from the BVOs used in the Product, Defendant failed to provide adequate warnings to the Plaintiff, Class Members, and public and continued to promote the Product as safe and effective.

60.    The defective warnings and labeling on the Product and BVO used in the beverage were substantial factors in bringing about the injuries to the Plaintiff and Class Members.

61.    As the direct and proximate cause of the defective condition of the Product manufactured and supplied by Defendant, and specifically Defendant's failure to warn, and Defendant's other negligence or actions described herein, Plaintiff and Class Members were significantly exposed to soda products containing BVO, a proven hazardous substance. Thus, Plaintiff and Class Members suffered, and continue to suffer, financial injury.

62.    As a further proximate result of Defendant's negligence, Plaintiff and Class Members suffer a significantly increased risk of contracting a serious latent disease, including, but not limited to, hypothyroidism or other neurological disorders; that increased risk makes periodic diagnostic medical examinations reasonably necessary; and monitoring and testing procedures exist which make early detection and treatment of the disease possible and beneficial.

63.    Plaintiff and the Class Members have suffered damages in an amount to be determined at trial that, among other things, refunds the amount Plaintiff and the Class Members paid for the Product, awards medical monitoring expenses, costs, interest and attorneys' fees.

## COUNT 4: FRAUDULENT CONCEALMENT

64.    Plaintiff incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

65.    At all relevant times, Defendant was engaged in the business of designing, manufacturing, and selling the Product.

66.    Defendant aimed to portray the Product as safe for frequent and repeated consumption and omitted key facts concerning the potential harm from prolonged consumption of BVO, a key ingredient in the Product.

67.    Defendant, acting through its representatives or agents, delivered the Product to its distributors and through other channels to consumers, including the Plaintiff and Class Members.

68.    Defendant, as the owner, manufacturer, marketer, and seller of the Product, had a duty to disclose because of Defendant's exclusive and/or superior knowledge concerning the composition of the Product. Defendant owed Plaintiff and Class Members a duty to disclose because the risks associated with BVO containing products were known and/or accessible exclusively to Defendant, who had superior knowledge of the facts; because the facts would be material to consumers; because Defendant actively concealed or understated them; because Defendant intended for consumers to rely on the omissions in question; and because Defendant made partial representations concerning the same subject matter as the omitted facts.

20

Furthermore, because the Product poses an unreasonable risk of substantial bodily injury, Defendant was under a continuous duty to disclose the Product contained a substance known to have adverse health effects.

69.    Defendant willfully and knowingly omitted material information regarding the quality and safety of the Product as discussed herein.  Defendant countenanced these material omissions to boost or maintain sales of the Product, and to create a false assurance that prolonged loyalty to Defendant's brand—the continued consumption of the Product—would not place consumers in danger. The omitted information and partial representations were material to consumers because they play a significant role in determining the value of the Product at the time of purchase.

70.    Defendant's failure to disclose the potential negative health effects of consuming the Product induced the Plaintiffs and Class Members to purchase the Product.  Plaintiff and Class Members had no way of knowing that Defendant's representations were false or misleading.

71.    Although Defendant had a duty to ensure the accuracy of the information regarding the Product because such information was within the exclusive knowledge of Defendant and because the information pertains to serious health issues, Defendant failed to satisfy its duty.

72.    Defendant engaged in fraudulent and deceptive conduct by devising and executing a scheme to deceptively convey that their products were safe. Defendant's actions were done to gain a commercial advantage over competitors, and to drive consumers, like the Plaintiff and Class Members, away from purchasing a competitor's product.

73.    As a direct and proximate consequence of their reliance on Defendant's omissions and partial representations, Plaintiff and Class Members were significantly exposed to soda products containing BVO, a proven hazardous substance.

74.    Plaintiff and Class Members would not have purchased the Product, or paid as much for the Product, had they known the truth. As a consequence of Defendant's fraudulent and deceptive conduct, Plaintiff and Class Members suffered, and continue to suffer, financial injury.

75.    As a further proximate result of the Defendant's fraudulent and deceptive conduct, Plaintiff and Class Members suffer a significantly increased risk of contracting a serious latent disease, including, but not limited to, hypothyroidism or other neurological disorders; that increased risk makes periodic diagnostic medical examinations reasonably necessary; and monitoring and testing procedures exist which make early detection and treatment of the disease possible and beneficial.

76.     Plaintiff and the Class Members have suffered damages in an amount to be determined at trial that, among other things, refunds the amount Plaintiff and the Class Members paid for the Product, awards medical monitoring expenses, costs, interest and attorneys' fees.

## COUNT 5: BREACH OF IMPLIED WARRANTIES

77.     Plaintiff incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

78.     At all relevant times, Defendant was a merchant engaged in the business of designing, manufacturing, and selling the Product.  Plaintiff and Class Members formed a contract with Defendant at the time they purchased the Product.

79.     Implied in the contract was a warranty that the Product was merchantable at the time of sale. Furthermore, at the time the contract was formed, Defendant knew, or should have known, that Plaintiff and Class Members were relying on Defendant's skill or judgment in determining whether the Product was safe to consume and was free from hidden defects that would make the Product unsuitable for its intended purpose.

80.     Americans spend over $60 billion per year on carbonated soft drinks. The average child drinks over 500 cans of soda each year. Carbonated soft drinks

are the third most consumed beverage in the world.[16] It is abundantly clear the intended purpose of the Product was to be consumed repeatedly, consistently, and for years to come. Defendant breached the implied warranties about the Product and its qualities because the Product is unfit for the ordinary purposes for which such goods are used.

81.  The Product is unfit for the ordinary purposes for which such goods are used because repeated consumption of beverages containing brominated vegetable oil has significant health consequences.

82.  Plaintiff and Class Members were significantly exposed to soda products containing BVO, a proven hazardous substance, as a direct and proximate result of Defendant's breach of implied warranties. Plaintiff and Class Members would not have purchased the Product had they known the Product did not conform to the warranties. As a consequence of Defendant's breach of implied warranties, Plaintiff and Class Members suffered, and continue to suffer, financial injury.

83.  As a further proximate result of the exposure, Plaintiff and Class Members suffer a significantly increased risk of contracting a serious latent disease, including, but not limited to, hypothyroidism or other neurological disorders; that

---

[16] *See, Surprising Soda Facts*, https://www.albanycounty.com/departments/health/programs-services/kids-growing-healthy-growing-strong/surprising-soda-facts (last accessed August 13, 2024).

increased risk makes periodic diagnostic medical examinations reasonably necessary; and monitoring and testing procedures exist which make early detection and treatment of the disease possible and beneficial.

84.    Plaintiff and Class Members have been injured such that notice to Defendant is not required.

85.    Plaintiff and the Class Members have been injured and suffered damages in an amount to be determined at trial that, among other things, refunds the amount Plaintiff and the Class Members paid for the Product, awards medical monitoring expenses, costs, interest and attorneys' fees.

## COUNT 6: BREACH OF EXPRESS WARRANTIES

86.    Plaintiff incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

87.    Defendant is, *inter alia*, engaged in the business of designing, manufacturing, constructing, making, selling, distributing, labeling, advertising, retailing, and/or otherwise placing the Product into the stream of commerce.

88.    Plaintiff and Class Members formed a contract with Defendant at the time Plaintiff and Class Members purchased the Product. The terms of that contract include the promises and affirmations of fact made by Defendant on the packaging for the Product and through marketing and advertising. This marketing and advertising constituted express warranties, and became part of the basis of the

bargain, and are part of the contract between Plaintiff, other members of the Class, and Defendant.

89.    Defendant purports through its advertising to create express warranties that the Product is of average quality, fit for the ordinary purpose for which carbonated beverages are used, does not contain potentially toxic chemicals, and is generally safe to consume repeatedly, consistently, and for years to come.

90.    All conditions precedent to Defendant's liability under these contracts have been performed by Plaintiff and Class Members when they purchased the Product and used it as directed.

91.    Repeated consumption of bromine has toxic effects on the thyroid gland and can cause hypothyroidism, leading to weight gain, depression, and other neurological symptoms. Despite Defendant's express warranties regarding the quality and safety of the Product, the Product contains bromine and, thus, contains ingredients that are not safe to consume, and therefore, the Product does not conform to the Defendant's promises and affirmations of fact contained on the packaging for the Product and Defendant's marketing and advertising.

92.    Plaintiff and Class Members were significantly exposed to soda products containing BVO, a proven hazardous substance, as a direct and proximate result of Defendant's breach of express warranties. Plaintiff and Class Members would not have purchased the Product had they known the Product did not conform

to the warranties. As a consequence of Defendant's breach of express warranties, Plaintiff and Class Members suffered, and continue to suffer, financial injury.

93.     As a further proximate result of the exposure, Plaintiff and Class Members suffer a significantly increased risk of contracting a serious latent disease, including, but not limited to, hypothyroidism or other neurological disorders; that increased risk makes periodic diagnostic medical examinations reasonably necessary; and monitoring and testing procedures exist which make early detection and treatment of the disease possible and beneficial.

94.     Plaintiff and Class Members have suffered damages in an amount to be determined at trial that, among other things, refunds the amount Plaintiff and the Class Members paid for the Product, awards medical monitoring expenses, costs, interest and attorneys' fees.

## COUNT 7: STRICT PRODUCTS LIABILITY

95.     Plaintiff incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

96.     Plaintiff and Class Members were in the group of persons that Defendant should reasonably have foreseen as being subject to the harm caused by the defectively designed Product and/or the BVO used in the Product insofar as Plaintiff and Class Members were the types of consumers for whom the Products

were intended to be used. Plaintiffs and Class Members used the Products as intended.

97.    Defendant, who is engaged in the business of selling, manufacturing and supplying the Product placed them into the stream of commerce in a defective and unreasonably dangerous condition such that the foreseeable risks exceeded the benefits associated with the design and/or formulation of the Product.

98.    The Product supplied to Plaintiff and Class Members was defective in design and formulation and unreasonably dangerous when they left the hands of Defendant and they reached the user and consumer of the Product, including Plaintiff and Class Members, without substantial alteration in the condition in which they were sold.

99.    The Product and/or the BVO contained in them were unreasonably and dangerously defective beyond the extent contemplated by ordinary persons with ordinary knowledge regarding these products.

100.    Defendant's Product was defective due to inadequate warning and/or inadequate testing and study, and inadequate reporting regarding the results.

101.    Defendant's Product was defective due to inadequate post-marketing warning or instruction because, after Defendant knew or should have known of the risk of injury from the BVOs used in the Product, Defendant failed to provide

adequate warnings to the Plaintiff, Class Members, and public and continued to promote the Product as safe and effective.

102.   The defective design, formulation, warnings and labeling associated with the Product and BVO used in the beverage were substantial factors in bringing about the injuries to the Plaintiff and Class Members.

103.   As the direct and proximate cause of the defective condition of the Product manufactured and supplied by Defendant, and specifically Defendant's failure to warn, and Defendant's other actions described herein, Plaintiff and Class Members were significantly exposed to soda products containing BVO, a proven hazardous substance. Thus, Plaintiff and Class Members suffered, and continue to suffer, financial injury.

104.   As a further proximate result of Defendant's conduct, Plaintiff and Class Members suffer a significantly increased risk of contracting a serious latent disease, including, but not limited to, hypothyroidism or other neurological disorders; that increased risk makes periodic diagnostic medical examinations reasonably necessary; and monitoring and testing procedures exist which make early detection and treatment of the disease possible and beneficial.

105.   Plaintiff and the Class Members have suffered damages in an amount to be determined at trial that, among other things, refunds the amount Plaintiff and

the Class Members paid for the Product, awards medical monitoring expenses, costs, interest, and attorneys' fees.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff, individually and on behalf of the putative Class, prays for judgment in their favor and against Defendant as follows:

A.   For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as the representative for the Classes and counsel for Plaintiff as Class Counsel;

B.   For an order declaring the Defendant's conduct violates the statues and causes of action referenced herein;

C.   For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

D.   For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

E.   For pre- and post-judgment interest on all amounts awarded;

F.   For an order of restitution and all other forms of equitable monetary relief requiring the disgorgement of the revenues wrongfully retained as a result of the Defendant's conduct;

G.   For injunctive relief as pleaded or as the Court may deem proper; and

H.   For an order awarding Plaintiff and the Classes their reasonable attorneys' fees and expenses and costs of suit, and any other expense, including expert witness fees; and

I.   Such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all claims in this Complaint and of all issues in this action so triable as of right.

Dated: August 13, 2024                    Respectfully submitted,

*/s/ Gary F. Lynch*
Gary F. Lynch (PA 56887)
**LYNCH CARPENTER, LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Tel: (412) 322-9243
Email: gary@lcllp.com

*/s/ Paul J. Doolittle*
Paul J. Doolittle, Esq.
*Pro Hac Vice forthcoming*
**POULIN | WILLEY |**
**ANASTOPOULO, LLC**
32 Ann Street Charleston, SC 29403
Tel: (803) 222-2222
Email: pauldoolittle@poulinwilley.com
cmad@poulinwilley.com

*Attorneys for Plaintiff*